IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ESTHER PURNELL | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| | : | NO. 19-612 |
| v. | : | |
| | : | |
| RADNOR TOWNSHIP | : | |
| SCHOOL DISTRICT, | : | |
| KENNETH E. BATCHELOR | : | |
| and MAUREEN A. | : | |
| MCGQUIGGAN, Ed.D, | : | |

## MEMORANDUM

Defendants' Partial Motion to Dismiss seeks to dismiss all punitive claims against all Defendants, all allegations against Radnor Township School District contained in Counts I-IV occurring after November 27, 2018 based on failure to exhaust administrative remedies, all Pennsylvania Human Relations Act ("PHRA") claims (Count V) based on failure to exhaust, alternatively the PHRA hostile work environment claim for failure to state a claim (Count V), and the claims against the Individual Defendants Kenneth Batchelor and Maureen McQuiggan only, and not Radnor Township School District, under § 1981 (Count VI) for failure to state a claim. ECF No. 3. Defendants do not move to dismiss the allegations against Radnor Township School District contained in Counts I-IV occurring before November 27, 2018, nor the § 1981 Count VI claim against Radnor Township School District. *Id.* Plaintiff admits in her response that the PHRA claims,

including the hostile work environment claim, against all Defendants were not properly exhausted and requests that the Court dismiss these claims without prejudice. ECF No 5-1 at 2. The Court will grant this request. Plaintiff additionally admits that the punitive claims against RTSD should be dismissed. *Id.*

Therefore, the only issues to be decided in this Partial Motion to Dismiss are: (1) whether all allegations against Radnor Township School District contained in Counts I-IV occurring after November 27, 2018 should be dismissed or stricken for failure to exhaust and (2) whether the § 1981 claim for individual liability against Defendants Batchelor and McQuiggan, including for punitive damages, should be dismissed for failure to state a claim.

## I. BACKGROUND

Plaintiff alleges that she began working at Radnor Township School District ("RTSD") in 2002 initially as a support teacher and ultimately as Principal of Radnor Middle School from October 2014 until her termination. ECF No. 1 at ¶ 9. Plaintiff claims that RTSD had five Principals, two of whom were African American, including Plaintiff, and six assistant principals, one of whom was African American. *Id.* at ¶ 11-12. The other principals were Caucasian. *Id.* at ¶ 12. Defendant RTSD hired Defendant Kenneth Batchelor ("Batchelor") as Superintendent of Schools as of January 30, 2017. *Id.* at ¶ 13. In July 2017, Defendant RTSD hired Defendant Maureen McQuiggan ("McQuiggan") (together

with Batchelor, the "Individual Defendants") as the Director of Secondary Teaching and Learning. *Id.* at ¶14.

Plaintiff alleges that, prior to their hiring, she performed sufficiently as principal of Radnor Middle School, had no negative performance reviews or disciplinary history worth note, and the school received a National Blue-Ribbon designation while she was acting as Principal in 2016. *Id.* at ¶ 15. In 2017, Plaintiff claims that Batchelor and McQuiggan placed Radnor Middle School, and no other schools, under review based on a negative survey and, therefore, Plaintiff and her staff were under scrutiny. *Id.* at ¶ 16-17. Plaintiff did not ever see the allegedly negative surveys. *Id.* at ¶ 17. Plaintiff alleges that McQuiggan was in charge of the review and gave a disproportionately negative review of Plaintiff. *Id.* at ¶ 18.

In December 2017, Plaintiff asked for a list of McQuiggan's concerns relating to the review, which Plaintiff and McQuiggan reviewed together, and then Plaintiff shared with her staff. *Id.* at ¶ 19. McQuiggan ultimately issued Plaintiff a "needs improvement" performance review for the 2016-2017 school year, based on this list of concerns. *Id.* at ¶ 20. Plaintiff alleges this is the only negative performance review that Plaintiff received. *Id.* at ¶ 21. Plaintiff then met with Batchelor and McQuiggan on a number of occasions to discuss this negative review and other related matters. On June 25, 2018 Plaintiff met with Batchelor to

discuss her retirement. *Id.* at ¶ 22. Batchelor invited McQuiggan to join this meeting and, during the meeting, Plaintiff alleges that Batchelor "became accusatory of Plaintiff" and McQuiggan "became critical of Plaintiff" and Radnor Middle School. *Id.* at ¶ 22. Plaintiff met again with Batchelor on September 6, 2019 and complained about "discrimination, specifically about the difficulties of being a black woman working for" RTSD. *Id.* at ¶¶ 23-24. This meeting "continued to September 7, 2018," when Plaintiff "more specifically complained she was being discriminated against on the basis of race, color, age, and gender" and informed Batchelor she was planning to make a formal complaint of discrimination. *Id.* at ¶ 25. On September 10, 2018, Plaintiff alleges she met with RTSD Director of Human Resources Todd Stitzel and discussed her job performance, administrative direction, and discrimination complaint. *Id.* at ¶ 27.

Plaintiff alleges that Batchelor and McQuiggan "suddenly began adding significance to matters surrounding Plaintiff Purnell's employment that were not treated or considered significant previously." *Id.* at ¶ 28. On October 11, 2018, Batchelor "issued a memorandum titled 'Summary of our Meetings held September 6 and 7, 2018,'" describing his understanding and interpretation of his meetings with Plaintiff and stating that Plaintiff complained about "a lack of sensitivity to persons of color in the District," that she felt bullied, and that McQuiggan does not know how to speak to persons of color. *Id.* at ¶¶ 29-31. This

summary also notes that Plaintiff complained that her 2016-2017 school year performance review was issued by McQuiggan in 2018, who was not hired until after the 2016-2017 school year ended. *Id.* at ¶ 32.

Plaintiff alleges that she was "summoned" to a meeting on October 15, 2018 to "discuss comments made in a special education meeting." *Id.* at ¶ 33. Plaintiff alleges that she was then "required to attend a meeting" on November 16, 2018 to discuss issues related to her employment, but, when a "weather event prevented the meeting from occurring on the day scheduled," this meeting was rescheduled to November 27, 2018. *Id.* at ¶¶ 34-36. Plaintiff alleges that some "RTSD staff and employees showed hostility towards Plaintiff Purnell for having not shown or been able to show for the meeting despite the weather event." *Id.* at ¶ 35. Plaintiff alleges that, at the rescheduled meeting, there was an increase in the number of topics about Plaintiff's employment, which showed an intention by RTSD to terminate Plaintiff. *Id.* at ¶ 37. After the rescheduled meeting, on the same day, RTSD suspended Plaintiff and allowed her 30 minutes to "leave the premises." *Id.* at ¶ 38.

Plaintiff received notice on December 5, 2018 for a December 7, 2018 meeting to determine if certain issues warranted disciplinary action. *Id.* at ¶ 41. Plaintiff attended another meeting on December 14, 2018 at which "RTSD handed her written notice that the Administration was recommending her termination to

the Board, and that she was now on unpaid suspended status beginning December 17, 2018." *Id.* at ¶ 42.

RTSD's Board of School Directors voted to terminate Plaintiff on January 22, 2019, while Plaintiff was suspended. *Id.* at ¶ 43-44. RTSD replaced Plaintiff with James Fulginiti, a Caucasian male, as interim Principal of Radnor Middle School. *Id.* at ¶ 46. Plaintiff alleges that RTSD did not conduct a good faith investigation into Plaintiff's September 2018 complaints of discrimination. *Id.* at ¶ 48.

## II. STANDARD

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

As indicated, the only issues left to decide are whether the allegations against RTSD in Counts I-IV occurring after November 27, 2018 have been properly administratively exhausted and whether Plaintiff fails to state a claim against the Individual Defendants Batchelor and McQuiggan for punitive damages and liability under § 1981.

A. Defendants Move to Dismiss All Allegations in Counts I-IV Occurring After November 27, 2018 for Failure to Exhaust

Defendants claim that Plaintiff failed to exhaust her administrative remedies for any allegation under Counts I-IV based on any allegedly wrongful conduct occurring after November 27, 2018. Defendants argue that the jurisdictional prerequisites to a suit under Title VII include filing a charge with the EEOC and receiving the Commission's statutory notice of the right to sue. ECF No. 3 at 12 (citing *Ostapowicz v. Johnson Bronze Company*, 541 F.2d 394, 398 (3d Cir. 1976)). The purpose for this administrative requirement is so that the EEOC is on notice of the claims and has "the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." ECF No. 3 at 12 (citing *Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009).

Defendants argue that the charge form submitted to the EEOC serves to define the scope of the Commission's investigation and must be reviewed to determine whether what was alleged in the Court action was encompassed in the EEOC investigation. ECF No. 3 at 13 (citing *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411 (3d Cir. 2010)). Defendants note that Courts generally define the parameters of the civil action by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. ECF No. 3 at

12 (*Ostapowicz*, 541 F.2d at 398-99). This can include new acts which occurred during the pendency of the proceedings before the Commission. *Id.*

Defendants claim that because Plaintiff's EEOC charge form, which states the date of the "latest" discrimination as November 27, 2018, does not describe any events occurring after that date, including Plaintiff's termination on January 22, 2019, these claims were not administratively exhausted and thus should be dismissed.[1] ECF No. 3 at 13-14. Defendants further argue that these post-November 27, 2018 claims "could not have been part of any investigation by the EEOC as the EEOC processed Plaintiff's [c]harge [f]orm" on December 17, 2018 "and dismissed that [c]harge on the same date." ECF No. 3 at 14-15. Defendants additionally note that the EEOC completed its investigation on December 17, 2018, and Plaintiff was not terminated until January 22, 2019, "thus [Plaintiff's

---

[1] Defendants attached several documents to their Motion to Dismiss, including a printout from the EEOC portal along with a copy of Plaintiff's Notice of Charge as Exhibit A; a copy of Plaintiff's Charge of Discrimination as Exhibit B; and a copy of the Dismissal and Notice of Rights as Exhibit C. ECF Nos. 3-1, 3-2, 3-3. Plaintiff also attaches to her response a copy of the Charge of Discrimination as Exhibit B. ECF No. 5-3 at 19. Plaintiff does not dispute the authenticity of any of the documents submitted by Defendant. On a motion to dismiss, outside of the complaint, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Williams v. The Renfrew Ctr.*, No. CIV.A.07-2833, 2008 WL 2550592, at *1 (E.D. Pa. June 26, 2008) ("Since the PHRC and EEOC documents attached to Defendant's Motion are both public records and documents central to Plaintiff's claim that she exhausted her administrative remedies, the Court may consider these documents without converting the Motion into a motion for summary judgment.") (internal citations omitted). This Court therefore considers the documents attached to Defendants' Motion to Dismiss in deciding this Partial Motion to Dismiss.

termination] could not have been part of the Commission's investigation." ECF No. 3 at 15.

Plaintiff claims that she properly exhausted the Title VII claims with the EEOC, arguing that the allegations in the Complaint occurring after November 27, 2018 are within the fair scope of the EEOC charge and within the fair scope of the investigation reasonably expected to grow from the charge. ECF No. 5-1 at 7. Plaintiff argues that at the time she filed her EEOC charge form, she alleged she had been "suspended indefinitely" and disputed her discipline and suspension as a pretext to discrimination. ECF No. 5-1 at 7. Plaintiff further notes that, in her EEOC charge, she claimed that Defendants "have been attempting to push [Plaintiff] out of her position due to . . . race discrimination, gender discrimination and recently in retaliation," which she now claims, "alludes to the possibility of being terminated." *Id.* at 7-8.

Plaintiff additionally argues that the Third Circuit considered a similar situation in *Waiters v. Parson*, where a defendant moved to dismiss the complaint of a plaintiff because the EEOC charge was for retaliation and did not include her subsequent discharge. 729 F.2d 233, 237 (3d Cir. 1984). The Third Circuit held that because the core grievance, retaliation, was the same in the EEOC charge and in the civil complaint, the allegations of the discharged employee's complaint fell within the scope of the EEOC investigation, even though the charge form did not

describe her discharge. *Id.* at 238. The Third Circuit additionally determined that, because "the policy of promoting conciliation would not be furthered" by requiring plaintiff to re-file an EEOC complaint to include her discharge, her claims were not barred for failure to exhaust. *Id.*

Here, Plaintiff submitted her EEOC charge form for discrimination based on race, color, sex, and age. ECF No. 3-2 at 2. The charge form stated that Plaintiff had been suspended indefinitely and noted that November 27, 2018 was the "latest" date that "discrimination took place." *Id.* In the charge form, Plaintiff alleged that, shortly following the hiring of Batchelor and McQuiggan to the positions of Superintendent and Director of Secondary Teaching and Learning, respectively, she, her staff, and her school were unfairly placed under review. *Id.* at 2-3. Plaintiff further alleged that, following this review, Plaintiff had several meetings with Batchelor and McQuiggan during which she felt that she was being discriminated against based on her race and gender. *Id.*

These allegations mirror Plaintiff's core grievance in this civil suit, which is discrimination and retaliation based on race and gender of the same underlying facts. *Id.* Even though Plaintiff did not include in her EEOC charge form any allegations occurring after November 27, 2018, because they had not yet occurred, these allegations undoubtedly fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

*Ostapowicz*, 541 F.2d 394, 398–99 (3d Cir. 1976). To the extent that her termination occurred after the EEOC had completed its investigation of Plaintiff's allegations and issued a right-to-sue letter, it would not promote conciliation to require Plaintiff to re-file her EEOC complaint when the core grievance is the same.

B. <u>Failure to State a Claim for Individual Liability and Punitive Damages under § 1981</u>

Defendants claim that Plaintiff has failed to state a claim for punitive damages and for liability under § 1981 against Individual Defendants Batchelor and McQuiggan. 42 U.S.C. § 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981.

The Third Circuit has found individual liability under Section 1981 where "individuals are personally involved in the discrimination against [plaintiff], and [where] they intentionally caused the [employer] to infringe on [plaintiff's] Section 1981 rights, or [where] they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d

Cir. 1986); *see also Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 474 (E.D. Pa. 2019) ("The United States Court of Appeals for the Third Circuit has found individual liability under § 1981 "when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.") (quoting *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001)).

Defendants argue that the Complaint is void of any factual averments that would establish any personal involvement by Batchelor and McQuiggan or show the Individual Defendants had engaged in any intentional infringement of Plaintiff's rights under § 1981. In response, Plaintiff purports to provide a list of the factual averments stated in the Complaint that Plaintiff believes supports her claim for individual liability under § 1981, including:

- Defendants disparately placed Plaintiff's school under review (¶¶ 16-17);
- Defendant McQuiggan issued Plaintiff a negative review (¶¶ 20-21);
- Defendants were accusatory and critical of Plaintiff (¶ 22);
- Defendants' treatment of Plaintiff was disparate (¶ 17);
- Plaintiff was bullied (¶ 31);
- Defendant McQuiggan does not know how to speak to persons of color (¶ 31);
- Defendants added significance to matters surrounding Plaintiff's employment that were not treated or considered significant before her complaint (¶¶ 23-28);
- Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under 42 USC § 1981 (¶ 103); and,
- Defendant[']s discrimination and retaliation of Plaintiff violated her civil rights.

ECF No. 1.

These averments are not factual. These statements are conclusions, and the Complaint contains no factual allegations to form a foundation for these conclusions, thus, not meeting the pleading standard of *Twombly*, *Iqbal*, and *Connelly*.

As stated above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is additionally tasked with "identify[ing] allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 550 U.S. at 679). "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." *Connelly v. Lane Const. Corp.*, 809 F.3d at 790.

Plaintiff has failed to state a claim for liability under § 1981 against the Individual Defendants Batchelor and McQuiggan because Plaintiff has alleged nothing more than these mere conclusory statements to support her claim. Simply alleging that McQuiggan and Batchelor were "accusatory and critical" of Plaintiff, that their treatment of Plaintiff was "disparate," that Plaintiff was "bullied," that McQuiggan "does not know how to speak to persons of color," and that

McQuiggan and Batchelor acted with "malice or reckless indifference" as to Plaintiff's rights is insufficient to state a claim for liability under § 1981. Plaintiff has not given any details regarding, for example, what specific actions the Individual Defendants have taken that were "accusatory and critical," why the Individual Defendants' placement of Plaintiff's school under review was "disparate," or how the Individual Defendants "added significance" to certain matters surrounding Plaintiff's employment. These claims are simply conclusions and therefore are not entitled to the assumption of the truth. Therefore, Count VI against the Individual Defendants must be dismissed.

Furthermore, as Plaintiff has failed to state a claim for liability of the Individual Defendants Batchelor and McQuiggan under § 1981, Plaintiff's claims for punitive damages against these Individual Defendants fail as well. Therefore, we dismiss Count VI as against Individual Defendants Batchelor and McQuiggan.

## IV. CONCLUSION

For the reasons stated above, this Court grants in part and denies in part Defendants' Partial Motion to Dismiss. The Court denies Defendants' Partial Motion to Dismiss all allegations against RTSD contained in Counts I-IV occurring after November 27, 2018. The Court grants Defendants' Partial Motion to Dismiss Count VI against Individual Defendants Batchelor and McQuiggan, including for punitive damages, for failure to state a claim. The Court therefore

dismisses Count VI against the Individual Defendants without prejudice to amend the Complaint in a manner that would comply with the law and legal standards set by the United States Supreme Court in *Twombly* and *Iqbal* and the Third Circuit in *Connelly*.

The Court additionally grants Defendants' Partial Motion to Dismiss Count V against all Defendants, by agreement of the parties. ECF No. 5. The Court grants Defendants' Partial Motion to Dismiss all punitive claims against Radnor Township School District, by agreement of the parties. ECF No. 5.

BY THE COURT:

DATED: 4-12-2019

_____
CHAD F. KENNEY, JUDGE