IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTHER PURNELL, | : |
|       Plaintiff, | : |
| v. | :   Case No. 19-cv-00612-JDW |
| RADNOR TOWNSHIP SCHOOL DISTRICT, | : |
|       Defendant. | : |

## **MEMORANDUM**

In September 2018, Esther Purnell complained to her employer Radnor Township School District that she was a victim of age, race, and gender, discrimination. From then until late November 2018, she was the subject of several disciplinary actions, culminating in a suspension and termination. Those disciplinary actions, following on the heels of Ms. Purnell's complaint, present facts from which a juror could conclude that the District fired Ms. Purnell for complaining about discrimination. A jury will therefore have to decide Ms. Purnell's retaliation claims. However, Ms. Purnell has not mustered evidence to support a finding of pretext on her discrimination claims. The Court will therefore grant the District's summary judgment motion as to those claims.

**I.      BACKGROUND**

    **A.      Ms. Purnell's Employment**

Ms. Purnell is a 58-year-old African-American woman. She worked for the District for seventeen years. From October 2014 until her termination, Ms. Purnell was the Principal at Radnor Middle School ("RMS"), the only middle school in the District. At the time, Ms. Purnell was the first and only African-American female principal in the District.

1

Ms. Purnell received an evaluation in each of her last two full school years as principal of RMS. Dr. Maureen McQuiggan, the District's Director of Secondary Teaching and Learning, performed both of Ms. Purnell's evaluations. For the 2015-2016 school year, Ms. Purnell received a rating of "proficient." For the 2016-2017 school year, she received a "needs improvement" rating, which is the category below proficient. Ms. Purnell's rating dropped in large part because she did not meet a goal that she set for herself of increasing the number of underperforming students. Ms. Purnell learned about her evaluation for 2016-2017 at least by April 10, 2018, but she did not complete and sign it until May 31, 2018.

### B. The District's Review Of The RMS Program

In January 2017, Kenneth Batchelor became the District's Superintendent of Schools. After starting, Mr. Batchelor undertook a review of the District's programs. The middle-school program at RMS received the largest response of high priority items. Based on his review, Mr. Batchelor prepared, and the District's School Board adopted, a goal for the 2017-2018 school year to evaluate RMS. For the 2018-2019 school year, the School Board adopted a goal to implement recommendations to improve the program at RMS.

### C. Retirement Discussions

At various times, Ms. Purnell discussed with her co-workers the prospect of retiring, though she now claims she was joking. However, as early as 2017, she started the process of transferring Maryland teaching credits to Pennsylvania to supplement her retirement. In addition, she registered for retirement seminars and scheduled appointments with the District's benefits personnel and her personal financial advisor to discuss retirement.

At some point in early 2018, Mr. Batchelor heard rumors that Ms. Purnell was planning to retire. Because a principal's retirement would pose a staffing issue, Mr. Batchelor had

conversations with Ms. Purnell about her plans to retire. Mr. Batchelor never told Ms. Purnell to retire, but he did ask her to tell him before the June 2018 School Board Meeting if she planned to retire. Though Ms. Purnell states that she felt Mr. Batchelor was "badgering" her about retirement, she admitted that Mr. Batchelor stopped talking about retirement when she asked him to stop.

### D. Scheduling At RMS

Preparing the student and teacher schedules at RMS was a continuing concern for the District and Ms. Purnell. In the Summer of 2018, the District provided administrative support to Ms. Purnell and RMS to prevent any scheduling mishaps at the beginning of the 2018-2019 school year. Ms. Purnell assured administrators that scheduling at RMS was complete in August 2018. However, on September 4, 2018, the first day of the school year, Ms. Purnell sent an email acknowledging that the student and teacher schedules were not finalized. The District claims that Ms. Purnell requested an additional staff member at a meeting that day, but she denies that. Dr. McQuiggan sent an email denying a request for an additional staff member.

Because of the scheduling failures at RMS, Dr. McQuiggan drafted a written reprimand of Ms. Purnell on September 4, 2018, and sent it to Mr. Batchelor. As of September 5, 2018, Ms. Purnell knew she was in trouble for "supposedly not having the master schedule ready" – which she denies was unfinished – and "asking for a staff member" – which she denies requesting. (ECF No. 27-3 at ¶ 106.) The District scheduled a disciplinary meeting for September 10, 2018, to discuss the issues concerning the RMS schedule.

### E. Ms. Purnell Complains Of Discrimination

After Dr. McQuiggan drafted the written reprimand of Ms. Purnell, but before the scheduled disciplinary meeting, Ms. Purnell met with Mr. Batchelor on September 6 and 7, 2018. During those meetings, Ms. Purnell complained to Mr. Batchelor about race, age, and gender

discrimination. Because Ms. Purnell raised serious concerns about discrimination, the District's Director of Human Resources, Todd Stitzel, suggested that the District convert the disciplinary meeting to a meeting to discuss Ms. Purnell's complaints of discrimination.

On September 10, 2018, Mr. Stitzel met with Ms. Purnell to investigate her complaints. Mr. Stitzel took notes in the meeting and allowed Ms. Purnell to edit those notes to ensure the focus of the investigation was correct. Over the course of his investigation, Mr. Stitzel interviewed several people, requested information from Dr. McQuiggan, and contacted Ms. Purnell for clarification on a number of occasions.

Mr. Stitzel found Ms. Purnell's discrimination claims to be unsubstantiated. He noted that Plaintiff's complaints were mainly tied to her "needs improvement" rating in her 2016-2017 review. He also concluded that Ms. Purnell's rating was not discriminatory because the largest factor which contributed to her rating was the failure to improve underperforming student performance—an objective metric over which neither Dr. McQuiggan nor anyone else at the District had any discretion. Further, Mr. Stitzel found that Ms. Purnell declined to provide more detail concerning other items listed in her harassment complaint. Her refusal limited Mr. Stitzel's ability to investigate, and he did not uncover evidence of unlawful harassment. On October 26, 2018, Mr. Stitzel emailed his findings to Dr. McQuiggan and Ms. Purnell.

### F. The District Identifies Issues With Ms. Purnell's Performance

During the fall of 2018, while Mr. Stitzel was investigating Ms. Purnell's complaint of discrimination, the District identified several issues relating to Ms. Purnell's performance.

#### 1. The online bullying incident

On Monday, September 17, 2018, a student at RMS shared an online bullying concern with a school counselor, who informed Ms. Purnell. Ms. Purnell did not have any contact the victim's

parents until the parents reached out themselves two days later. Another middle school parent raised a concern about the bullying to the Superintendent, Mr. Bachelor. Mr. Batchelor looked into the incident and determined that Ms. Purnell failed to notify the parents of the student that made the complaint. Ms. Purnell claims that she was honoring the victim's request to tell his parents first. Ms. Purnell told Mr. Batchelor that she did not contact the police because the police were already involved. She later conceded that she never spoke to the police about the incident.

Ms. Purnell did not discipline the perpetrator. Instead, she met with the perpetrator's parents and applied interventions to help the student change his behaviors. Mr. Batchelor then became involved and directed additional punishment. The victim's parents told Mr. Batchelor that they felt that the situation was "bungled so badly from the start that we don't hold out a lot of hope for closure or a feeling of confidence in the process at the RMS level." (ECF 25-14 at Ex. 7.)

### 2. The IEP meeting

On September 13, 2018, Ms. Purnell attended a meeting to prepare an Individual Education Plan for a student. During that meeting, she functioned as the Local Educational Agency representative, meaning she spoke on behalf of the District. Following the meeting, someone reported to the District's Director of Special Education Jenny LeSage that Ms. Purnell indicated to the parents that a decision would be made by the District's central office, rather than the IEP team. That structure would have departed from the District's protocols. Ms. Purnell denies she made this statement, however. The District reached a settlement (which cost $54,000) with the parents of the student in question.

### 3. The PaTTAN meetings

At the beginning of the 2018-2019 school year, RMS had an incoming special education student who required court-ordered special programming. The District anticipated that

implementing that programming would be problematic. The District brought in the Pennsylvania Training and Technical Assistance Network ("PaTTAN") to provide training. On September 12, 2018, Ms. LeSage requested that Ms. Purnell attend at least one of the trainings per week. Ms. Purnell only attended a few meetings in person because she thought the requirement was not necessary. Other times, she joined meetings by phone for at least part of the meeting.

### 4.     **Reimbursement for conferences**

In the Fall of 2018, the District received forms from RMS staff seeking approval for attendance at conferences. Ms. Purnell signed the forms, indicating that payment for the conferences would come from the RMS budget, a decision that was contrary to the District's policy. That incident culminated a dialog that the District had with Ms. Purnell about following procedures to obtain reimbursement for conference attendance. Ms. Purnell admits that she did not follow the District's protocols but suggests that the infractions were minor.

### 5.     **Allegations of improprieties by other administrators**

When Ms. Purnell first complained about discrimination to Mr. Batchelor, she claimed that the District treated her less favorably than other administrators who engaged in sexual relationships. However, Ms. Purnell did not provide details about those administrators. Mr. Batchelor asked Mr. Stitzel to investigate any sexual improprieties among members of the District's administration. When Ms. Purnell met with Mr. Stitzel on September 10, 2018, he asked about this, but she again refused to provide information. (Plaintiff purports to dispute this fact, but she does not identify any evidence that might contradict this fact.) The District never verified Ms. Purnell's accusation.

### G. The District Disciplines And Terminates Ms. Purnell

On November 15, 2018, Mr. Stitzel sent Ms. Purnell a memo instructing her to attend a meeting the following day that would include Ms. Purnell, Mr. Stitzel, and Dr. McQuiggan to address Ms. Purnell's allegations of sexual improprieties at the District, the incident of student bullying, and the reimbursement for conferences, among other issues. As a result of a snowstorm, the meeting was delayed and took place on November 27, 2018. At the meeting, Ms. Purnell responded "no comment" and refused to answer several questions.

Ms. Purnell's conduct at that meeting caused Mr. Batchelor to lose confidence in Ms. Purnell.[1] Mr. Stitzel recommended that the District suspend Ms. Purnell with pay and begin the process of terminating her. Mr. Batcheor agreed, and Mr. Stitzel informed Ms. Purnell of the decision.

On December 7, 2018, the District held a hearing regarding Ms. Purnell's termination. During that hearing, Ms. Purnell said that she refused to answer questions at the meeting on November 27 because her counsel told her not to answer questions that made her uncomfortable. However, she answered those questions during the hearing. At the conclusion of the hearing, Mr. Stitzel told Ms. Purnell that he would recommend that the District terminate her employment.

On January 23, 2019, the District sent Ms. Purnell a Statement of Charges and Notice of Right to Hearing. That letter listed eight infractions on which the District based its decision to terminate her: (1) failing to follow District procedures for professional conferences during all of 2018; (2) failing to schedule and staff RMS properly in summer 2018 and dishonesty about that

---

[1] Ms. Purnell says that she can "neither admit nor deny" this fact from Paragraph 190 of the District's statement of undisputed facts. Statements of undisputed facts are not pleadings. To rebut a fact, Ms. Purnell must point to evidence that contravenes the District's facts. Her failure to do so means that the Court treats the fact as undisputed.

7

issue; (3) refusing to provide information about her allegations of sexual misconduct at the meeting with Mr. Stitzel on September 10, 2018; (4) failing to represent the District properly during the IEP meeting on September 13, 2018; (5) her inadequate response to the bullying incident; (6) failing to complete and sign her 2016-2017 evaluation until May of 2018; (7) failing to attend the PaTTAN meetings; and (8) refusing to answer questions at the meeting November 27, 2018. The District formally terminated Ms. Purnell on February 26, 2019, after Ms. Purnell declined to request a School Board hearing and the School Board voted to terminate her employment.

### H. Procedural Background

On February 13, 2019, Ms. Purnell filed a Complaint against the District, Mr. Batchelor, and Dr. McQuiggan. Judge Kenney dismissed Ms. Purnell's claims against Mr. Batchelor and Dr. McQuiggan on April 12, 2019. On October 18, 2019, Ms. Purnell filed an Amended Complaint. The Amended Complaint asserts the following claims: (I) racial discrimination in violation of Title VII; (II) gender discrimination in violation of Title VII; (III) retaliation for complaining of racial discrimination in violation of Title VII; (IV) retaliation for complaining of gender discrimination in violation of Title VII; (V) retaliation and discrimination under the Pennsylvania Human Relations Act; and (VI) discrimination and retaliation under 42 U.S.C. §1981. The District moved for Summary Judgment on all claims of Ms. Purnell's claims. In response, Ms. Purnell has agreed to drop her Section 1981 claim.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

### III. DISCUSSION

Because Ms. Purnell has not alleged any direct evidence of discrimination or retaliation, the Supreme Court's familiar framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies here. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425-26 (3d Cir. 2013) (discrimination); *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (retaliation). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If she does, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the action taken. *Id.* If the defendant does so, then the burden shifts back to the plaintiff to demonstrate that the reason was a pretext. To do so, she must point to "some evidence, direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

9

### A.     *Prima Facie* Case

The District concedes that Ms. Purnell has established a *prima facie* case of gender discrimination, race discrimination, and age discrimination. However, it disputes that she has established a *prima facie* case of retaliation.

A *prima facie* retaliation claim requires plaintiff to demonstrate that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Id.* The District only disputes whether Ms. Purnell has satisfied the third prong. "An employee may establish a causal nexus if he shows 'unusually suggestive' temporal proximity between the two events." *Holt v. Pennsylvania*, 683 F. App'x 151, 157 (3d Cir. 2017) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "[W]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may [also] look to the intervening period for other evidence of retaliatory animus." *Holt,* 683 F. App'x at 157 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (internal citations omitted)). Circumstantial evidence of retaliatory animus may include a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other "evidence gleaned from the record as a whole" that is sufficient to support an inference of retaliatory animus. *Id.*

Ms. Purnell has demonstrated a causal connection between her protected activity and the adverse actions. The District argues that the lapse of time from Ms. Purnell's complaints on September 6 and 7 to her suspension on November 27 undermines any claim of temporal proximity. That argument ignores the fact that Mr. Stitzel's investigation into Ms. Purnell's complaints was not complete until October 26, 2018. One might reasonably expect an employer to wait to retaliate until it knows that it can declare the underlying claim meritless. *See Farrell v.*

*Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000) (courts must consider specific facts and circumstances encountered with a careful eye in considering temporal proximity). This one-month time period might support a finding of causation on its own, but the Court does not have to rely only on that issue.

Where the temporal proximity, standing alone, is not unusually suggestive of retaliation, courts look at the passage of time plus other intervening retaliatory acts. *See id.* at 280; *Gladysiewski v. Allegheny* Energy, 398 F. App's 721, 723 (3d Cir. 2010). In addition to the passage of time, Ms. Purnell points to evidence of intervening retaliatory acts. From the time that Ms. Purnell complained about discrimination, she was subject to discipline of a variety of issues, including her conduct at the IEP meeting, her attendance at PaTTAN sessions, her compliance with policies for the District's procedures for attending conference, scheduling problems at RMS, her handling of the bullying incident, her failure to complete and sign her evaluation, and her refusal to answer Mr. Stitzel's questions. The District's approach to discipline with Ms. Purnell was different from prior years. There is no evidence in the record that, in the years before her charge of discrimination, Ms. Purnell faced any discipline from the District. In the fall of 2018, though, she faced discipline for eight separate issues. A reasonable factfinder could conclude from the change in the District's behavior that her suspension and termination were the result of retaliation.

### B. Legitimate Nondiscriminatory Reason

The District has met its burden by articulating legitimate, non-discriminatory reasons for Ms. Purnell's suspension and termination: the various issues with her performance, including scheduling problems, lack of attendance at PaTTAN meetings, her handling of the bullying

incident and the IEP meeting, her failure to comply with District policies about conference attendance, and her refusal to answer questions in September and November 2018.

### C. Pretext

Ms. Purnell argues that a reasonable factfinder could both disbelieve the District's articulated reasons for her dismissal and conclude that discriminatory animus was more likely than not a motivating factor in her termination. As stated above, Ms. Purnell has two options to prove pretext: (1) pointing to evidence that the District's proffered reason is subject to such weaknesses and implausibilities sufficient to satisfy the factfinder that the District's actions could not have been for nondiscriminatory reasons; or (2) pointing to evidence leading a factfinder to reasonably believe that a discriminatory reason was more likely than not a motivating or determinative factor in her suspension and termination. *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 679 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-CV-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019), *and aff'd*, 769 F. App'x 57 (3d Cir. 2019) (citing *Willis*, 808 F.3d at 644–45).

#### 1. Basis to disbelieve the District's stated reason

Ms. Purnell has not identified evidence to permit a juror to disbelieve the District's articulated reasons. Throughout her Opposition, Ms. Purnell takes issue with the way that the District interpreted or applied its rules or with the conclusions that the District reached about her conduct. Her arguments amount to nothing more than her disagreement with the District's decisions. However, to show that there is a basis to disbelieve an employer's reason, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (citing *Ezold,* 983 F.2d at 531,

533; *Villanueva v. Wellesley College,* 930 F.2d 124, 131 (1st Cir.), *cert. denied,* 502 U.S. 861 (1991)). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* Ms. Purnell's arguments do not satisfy this heavy burden.

### 2.     Basis to find discrimination a motivating or determining factor

Ms. Purnell points to different evidence to establish evidence of invidious discrimination on the basis of (a) race and gender, (b) age, and (c) retaliation. The Court addresses each in turn.

#### a.     Race/gender

Ms. Purnell has not identified evidence to permit a factfinder to believe that discrimination on the basis of race, gender, or age was more likely than not a motivating or determinative cause for her termination. With respect to race and gender discrimination, the only evidence that Ms. Purnell identifies is her assertion that the District treated her differently than the white, male principal of Radnor High School (Dan Bechtold) because Dr. McQuiggan completed Ms. Purnell's evaluation for 2016-2017 but not Mr. Bechtold's evaluation, even though Dr. McQuiggan did not supervise either of them in 2016-2017. Mr. Bechtold received a better evaluation. However, Ms. Purnell offers no evidence that race or gender played any role in the procedural or substantive disparity between their evaluations for that school year. It therefore cannot support a claim of pretext.

#### b.     Age

Ms. Purnell argues that Mr. Batchelor "badgered" her to retire, that he presented to her a vision for RMS that did not include her, went to the School Board and then to her with retirement incentives, and blamed her for not retiring. (ECF No. 27-2 at 16.) To begin, Ms. Purnell has not

pointed to any evidence that Mr. Batchelor went to the School Board or her with retirement incentives. The other conduct to which Ms. Purnell points does not permit a factfinder to find that age was more likely than not a motivating factor in her termination.

An employer cannot force an employee to choose between retirement and termination, but the evidence does not suggest that Ms. Purnell faced such a choice. Ms. Purnell admits that she talked with co-workers about retiring in the Spring of 2018. She claims she was joking, although she did take some steps towards retirement that suggest she was serious. But even if she was joking, Mr. Batchelor had a good reason to discuss her plans with her so that he could plan for the future. *See Sandusky v. HDH Grp., Inc.*, No. 2:18-CV-00386, 2019 WL 6312242, at *7 (W.D. Pa. Oct. 8, 2019), *report and recommendation adopted*, No. CV 18-386, 2019 WL 6310753 (W.D. Pa. Nov. 25, 2019) (stating that courts have held that "without, *e.g.*, accompanying suggestions of age-animus, such inquiries [into employees' retirement planning] are not inherently evidence of pretext"); *Rexses v. The Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 869 (5th Cir. 2010) ("An employer's inquiry into an employee's age and retirement plans is not by itself evidence of discriminatory intent"). Ms. Purnell also acknowledges that when she asked Mr. Batchelor to stop talking to her about retirement, he did. No reasonable factfinder could find from these facts that Ms. Purnell's age played a role—either motivating or determinative—in her termination.

### c. Retaliation

The same evidence that establishes the causation element of Ms. Purnell's retaliation claim gives a factfinder a basis to find that the District had a retaliatory animus when it terminated her. Many cases note this common overlap of proof. *See, e.g., Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 702 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-CV-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019), and *aff'd*, 769 F.

App'x 57 (3d Cir. 2019) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 n. 6 (3d Cir.1989) ("Although this fact is important in establishing plaintiff's prima facie case, there is nothing preventing it from also being used to rebut the defendant's proffered explanation.") and *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir.2000) (noting same)).

As discussed, Ms. Purnell has put forward sufficient evidence that she was subject to a much higher level of scrutiny following her complaints of discrimination than she had ever been subject before. Considering the facts as a whole, including the heightened level of review and discipline during the time Plaintiff's complaint was being investigated, the Court finds that Ms. Purnell has presented sufficient evidence to permit a factfinder to believe that a retaliatory reason was more likely than not a motivating factor in her suspension and termination. Therefore, there is a genuine issue of material fact as to whether Defendants' articulated reason for firing her was really pretext for retaliation.

## IV.   CONCLUSION

Ms. Purnell's performance might have given the District a reason to terminate Ms. Purnell. Ms. Purnell has no evidence to suggest that the District's real motive was race, gender, or age discrimination. But, the District's pattern of discipline against her after she complained about discrimination is enough to permit a factfinder to conclude that a retaliatory animus motivated the District's decision. A jury will have to decide, and the Court will therefore deny summary judgment on that issue. Ms. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

Dated:  June 12, 2020