**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ESTHER PURNELL,** | |
| *Plaintiff,* | **Case No. 19-cv-00612-JDW** |
| v. | |
| **RADNOR TOWNSHIP SCHOOL DISTRICT,** | |
| *Defendant.* | |

**MEMORANDUM**

Following a week-long trial, a jury determined that the Radnor Township School District retaliated against the former principal of the Radnor Middle School, Ether Purnell, after Mrs. Purnell complained of discrimination.  The jury awarded compensatory damages to Mrs. Purnell.  In addition, the jury rendered an advisory verdict that Mrs. Purnell is entitled to back pay and front pay, despite finding that Mrs. Purnell failed to mitigate her damages.  Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law and determines that Mrs. Purnell is entitled to $88,738.44 in back pay but is not entitled to front pay.

**I.     FINDINGS OF FACT**

     **A.     Mrs. Purnell's Termination**

     1.     Mrs. Purnell became principal of the Radnor Middle School in 2014.

2.      Radnor Township School District suspended Mrs. Purnell without pay on December 17, 2018, and it terminated her employment on February 26, 2019.

3.      Per the Jury's verdict, the District terminated Mrs. Purnell in retaliation for her having made a complaint of discrimination.

4.      Mrs. Purnell was 58 years old at the time of her termination.

**B.      Mrs. Purnell's Salary And Benefits At The Time Of Termination**

5.      At the time of her termination, Mrs. Purnell earned $143,800 per year in salary.

6.      At the time of her termination, Mrs. Purnell received yearly health insurance benefits that cost the District approximately 14.7% of her annual salary, totaling approximately $21,000 per year.

7.      At the time of her termination, Mrs. Purnell had accrued a pension with the Public School Employees' Retirement System ("PSERS") worth $99,000 per year.

**C.      Mrs. Purnell's Dissatisfaction With Her Supervisor**

8.      Mrs. Purnell loved the students at the Radnor Middle School, and she took great pride in serving the Radnor Township community as the school's principal.

9.      The job of principal could be demanding, and Mrs. Purnell described it as "a 24/7 job" that intruded upon her personal time, including vacation. (Trial Testimony ("T.T."), May 2, 2022 ("Day 1") 25:13-15.)

10.     On July 1, 2017, Dr. Maureen McQuiggan[1] became Mrs. Purnell's direct supervisor.

11.     Mrs. Purnell felt that Dr. McQuiggan "seldom had anything positive or good to say about what the middle school was doing, how [it was] performing." (*Id.* at 39:21-23.)

12.     Mrs. Purnell also perceived Dr. McQuiggan to have a "hang-up with the middle school" and that something kept Dr. McQuiggan "from feeling like [the middle school was] doing a good job." (*Id.* at 40:14-17.) Mrs. Purnell felt that Dr. McQuiggan had a "disgruntled attitude" toward the middle school and that the middle school left Dr. McQuiggan with a "sour taste" in her mouth. (*Id.* at 42:16-19.)

13.     Mrs. Purnell felt that Dr. McQuiggan responded to requests from the middle school with "venom and poison" and by imposing "barriers and roadblocks." (*Id.* at 42:20, 43:25-44:10.)

14.     In the spring of 2018, Mrs. Purnell learned that Dr. McQuiggan had given Mrs. Purnell a "needs improvement" score in her annual evaluation.

15.     Mrs. Purnell thought that she was performing her job well and did not believe that she deserved a negative performance review.

---

[1]     Since that time, Maureen McQuiggan has changed her last name to Hoffman. However, the Parties referred to her as Dr. McQuiggan throughout the duration of this matter, including at trial. Thus, the Court continues to refer to her as Dr. McQuiggan, for the sake of consistency.

16.     Upon receiving her review from Dr. McQuiggan, Mrs. Purnell told her husband that Dr. McQuiggan had "finally proven herself to be who [Mrs. Purnell] thought she was ...." (*Id.* at 63:10-17.)

17.     If Mrs. Purnell had received a second "needs improvement" score, that would have been unsatisfactory, jeopardizing her employment.

18.     The Court finds, based on the totality of the evidence, that Mrs. Purnell did not like having Dr. McQuiggan as her supervisor and felt that Dr. McQuiggan held her to an unfair standard.

### D.     Mrs. Purnell's Plan To Retire

19.     On June 25, 2018, Mrs. Purnell met with the School District Superintendent, Dr. Kenneth Batchelor.  They discussed the negative performance evaluation, and they also discussed whether Mrs. Purnell intended to retire.  Mrs. Purnell felt as though Dr. Batchelor was pressuring her to retire and confronted him about it during the meeting. Dr. Batchelor acknowledged that they discussed retirement during the meeting, but he denied that he was pressuring Mrs. Purnell to retire. The Court finds Mrs. Purnell's version of events not to be credible and finds that the discussion of Mrs. Purnell's possible retirement was innocent, not an attempt to pressure her to retire.

20.     On July 3, 2018, Mrs. Purnell wrote to the Personnel Coordinator for Caroline County Public Schools in Maryland and asked the Coordinator to complete a form that Mrs. Purnell could submit to PSERS to obtain two years of credit for her time spent

4

teaching in Maryland.  PSERS would count that time towards her pension.  Mrs. Purnell

shared: "I hope this goes through successfully.  I'm ready to begin my retirement process

and this is a significant step in the process."  (Ex. 163.[2])

21.     Mrs. Purnell followed-up on that email on July 5, 2018.

22.     On July 16, 2018, Mrs. Purnell followed-up a second time, writing: "I meet

with my HR Benefits Coordinator tomorrow and we're planning ahead as much as

possible." (*Id.*)

23.     The next day, Mrs. Purnell met with the HR Benefits Coordinator, Barbara

Fretchel.  During their conversation, Ms. Fretchel advised Mrs. Purnell that if Mrs. Purnell

worked until March 8, 2019, she would gain another year of service, for pension purposes.

Mrs. Purnell responded: "You are kidding me" and "That sounds exciting."   (T.T., May 3,

2022 ("Day 2"), 271:12-25.)

24.     Ms. Fretchel ran two calculations of the amount of retirement benefits that

Mrs. Purnell would receive, one calculation including the two years of Maryland service

and the other without.  For both calculations, Ms. Fretchel used a projected retirement

date of March 8, 2019, and listed the "Retirement Type" as "EARLY5525."  (Ex. 164.)

25.     Ms. Fretchel also calculated what Mrs. Purnell's estimated monthly taxes

would be upon retirement and receipt of her pension income.  In making this estimate,

---

[2] Citations to "Ex." refer to Exhibits that the Court admitted at trial.

Ms. Fretchel used the 2015-2016, 2016-2017, and the 2017-2018 school years to calculate Mrs. Purnell's final average salary.

26.     On July 28, 2018, Mrs. Purnell wrote to Daniel Lex, a financial advisor with VALIC, where Mrs. Purnell has a retirement account.  In her email, Mrs. Purnell stated:  "I called you some months ago & didn't hear back from you.  I need to meet with you."  (T.T., Day 1, 242:15 – 243:20; 263:3-7; Ex. 166.)  They arranged to meet the following week.

27.     The next day, Mrs. Purnell wrote to the Personnel Coordinator in Maryland, confirming that PSERS received the completed form and thanking her for her assistance in the process.

28.     Mrs. Purnell forwarded her email exchange with the Maryland Personnel Coordinator to a colleague, Andrea McMenamin, saying: "Shhh 🤫!"  (Ex. 167.)

29.     After her termination, Mrs. Purnell did not look for another job as a teacher or school administrator.

30.     In 2007, Mrs. Purnell started a company called "Salty Oasis" to provide counseling to children.  Mrs. Purnell's work with Salty Oasis has been her "primary profession" since the District terminated her. (T.T., Day 2, 150:1-3.) But she has earned little if any income from Salty Oasis. In addition, as of her deposition in this case, Mrs. Purnell had not activated a website for the company, she had not done any marketing for the company, and she had deactivated the company's social media accounts.  There is no

evidence from which the Court could conclude that Mrs. Purnell is making concerted efforts to earn income from Salty Oasis.

31.     The Court finds that Mrs. Purnell intended to retire at the end of the 2018-2019 school year. The Court bases its finding on the fact that Mrs. Purnell did not like reporting to Dr. McQuiggan, her emails about her retirement planning conveyed urgency, and her email to Ms. McMenamin suggested that her retirement planning should remain a secret, among other things.

32.     Mrs. Purnell suggested that her email to Ms. McMenamin, with the word "Shhh" and a winking emoji, just meant, "this is good." (T.T., Day 2, 242:5-8.) The Court finds that testimony not to be credible.

33.     Although Mrs. Purnell's retirement planning documents used a projected retirement date of March 8, 2019, the Court finds that Mrs. Purnell did not intend to retire that day. If she had retired in the middle of the school year, it would have been disruptive to the school and the students, and the Court credits Mrs. Purnell's testimony about her dedication to the students and the school.

34.     However, a retirement at the end of the school year would not have been as disruptive and would have allowed for an orderly transition to the following year. Because Mrs. Purnell's communications make clear that she intended to retire, the Court finds that her intended retirement date was the end of the 2018-2019 school year, which is June 30, 2019.

35.     In addition, Mrs. Purnell has not applied for another job as a teacher or school administrator, nor did she take steps to maximize Sandy Oasis as a business. These facts suggest that Mrs. Purnell has been content with her retirement.

## II.     CONCLUSIONS OF LAW

1.     "[B]ack pay and front pay are equitable remedies to be determined by the court." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009) (citations omitted).

2.     "Back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination." *Id.* at 84.  As a result, back pay is calculated "from the time of discrimination until trial[.]" *Id.* at 86.

3.     In this case, an award of back pay starts to run as of December 17, 2018, because that is the day that the School District suspended Mrs. Purnell without pay.  Had the School District not done so (and not terminated Mrs. Purnell thereafter), she would have continued receiving a salary and benefits and accruing pension funds for the next 28 weeks, until her retirement at the end of the school year, June 30, 2019.

4.     Mrs. Purnell would have been entitled to an additional $77,430.64 ($2,765.38 per week * 28 weeks) in salary and another $11,307.80 ($403.85 per week * 28 weeks) worth of benefits.

5.      As a result, Mrs. Purnell is entitled to $88,738.44 in back pay.  This award makes Mrs. Purnell whole "by restoring [her] to the position [she] would have been in absent the discrimination." *Donlin*, 581 F.3d at 84.

6.      The District argues that Mrs. Purnell cannot recover back pay because she did not mitigate her damages. A plaintiff's failure to mitigate her damages does not "wholly cut off the right to any back pay." *Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995).  However, a court may reduce an award of back pay if a plaintiff fails to mitigate her damages. *See id.* at 867 n.2.

7.      Mrs. Purnell's intended retirement, and her apparent acceptance of her retirement (rather than looking for another job or maximizing Sandy Oasis as a revenue-generating entity), mean that she cannot recover back pay for any time after June 30, 2019, nor is she entitled to an award of front pay.

## III.   CONCLUSION

Mrs. Purnell's testimony and emails—including her email to Ms. McMenamin—demonstrate that she intended to retire at the end of the 2018-2019 school year. She is entitled to back pay for the time from her suspension until her planned retirement, but not after that. The Court will therefore award her back pay in the amount of $88,738.44. Because Mrs. Purnell intended to retire on June 30, 2019, the Court will not award her front pay. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

June 1, 2022